REPLACEMENT PARTS COMPANY, INC. *vs.* FREDERICK J. McCAUGHEY.

JANUARY 25, 1945.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

Moss, J. This is an action in assumpsit, brought in a district court to recover an alleged indebtedness of $107.28 on book account. After a trial a decision was rendered for the plaintiff for that amount. The defendant took an appeal to the superior court and there filed a plea in setoff for the amount of $2500 for work and labor performed by the defendant and for money which he alleged was due and owing to him by the plaintiff on an account stated.

At a jury trial in the superior court a verdict for the defendant on this plea was returned and damages were assessed at $2453.38. A motion by the plaintiff for a new trial, based upon the usual grounds and also on the ground of newly discovered evidence, was denied in a rescript by the trial justice; and the case is now before us on the plaintiff's exception to this decision and on two exceptions taken by the plaintiff at the trial to rulings by the trial justice as to the admission of certain testimony, all other exceptions taken by the plaintiff being waived.

Most of the facts involved in the case are not in dispute. The plaintiff corporation during the period of time involved and for a good many years prior thereto was engaged in the business of selling automobile spare parts, with its place of business in the city of Providence. During the latter part of that prior period the defendant was employed by the plaintiff in its store as a salesman and later as manager also, at a regular salary, which, while he was manager, was $38 per

week. Then the principal stockholder, by the name of Spielmacher, who apparently controlled the corporation, took over position of manager and the defendant became an outside salesman in Rhode Island from the summer of 1938 at the same salary. This arrangement continued in effect until April 1, 1939.

Beginning on the latter date and continuing to March 20, 1942, when he voluntarily left the employment of the plaintiff, he was working on the basis of a commission of 27½% of the difference between the selling prices of the goods sold by him and their cost prices to the plaintiff. He was actually paid by the plaintiff weekly $38, (less slight deductions for old age insurance and unemployment insurance), until February 29, 1940, when the amount of the gross payment was reduced to $35 per week, which continued to February 1, 1941, when it was further reduced to $30 per week, for the rest of the time of his employment.

It is noteworthy that these reductions correspond fairly closely with reductions in the amounts of the profits from his sales and the consequent reductions in the amounts of his monthly commissions on these sales. The result was that, as agreed by counsel for both parties, his commissions, earned during this whole period of his employment on a commission basis, amounted to $5123.56 and the payments to him, before the deductions for the insurance funds, amounted to $5213.88, the difference being $90.32, one of the sums sued for by the plaintiff. It is also admitted that at the end of this period he owed the plaintiff $16.96 for merchandise bought by him from the plaintiff, the total of these two sums, $107.28, being the amount sued for by the plaintiff.

The main contention by the defendant, in support of his plea of setoff and his claim in his bill of particulars, is that he received from the plaintiff, in part payment of his earned commissions of $5123.56, only $2934.68, leaving a balance of $2188.88 due him on such commissions. At the trial this contention was supported by testimony by him that by an

agreement between him and Spielmacher, made when he went on a commission basis, he was to receive, *in addition to his commissions on sales,* payments at the rate of $15.60 per week for the use of his motor car in making the sales; but that these payments had actually been made to him out of, and charged against, his commissions.

This testimony was flatly denied by Spielmacher, who testified in substance and effect that the agreement between them was that out of the commissions payable to the defendant, at the rate of 27½% of the gross profit on sales made by the latter, $15.60 per week should be treated as payable to him for the use of his car in the business; and that only the remainder of the commissions should be treated as payable to him, and should be paid to him, for his personal services to the plaintiff.

Spielmacher also testified, in effect, that this deduction of $15.60 per week, shown monthly on the flaps of pay envelopes, was made for the purpose of determining the amounts payable by the plaintiff and defendant into the state old age insurance and unemployment insurance funds, and also of assisting the defendant in determining his taxable net income to be stated in his federal income tax returns. The defendant testified that in making such returns he did deduct the travel pay in determining his net income.

That such deductions were made by the plaintiff in determining the monthly tax contributions payable into the old age and unemployment insurance funds is clearly shown by defendant's exhibits 1 and 2. These include five flaps which were received by him attached to five weekly pay envelopes delivered to him by the plaintiff during the period involved in this case. Each of these flaps shows, for the four or five weeks period covered thereby, the deduction, solely in the process of determining such insurance payments, as above noted, of traveling expense of $15.60 per week from the defendant's commissions for the period covered.

Only one of the pay envelopes to which these flaps were attached was introduced in evidence, the others not having

been kept by the defendant. That one is for the week ending May 4, 1940; and it shows "Total Wages" for that week of $35 and deductions therefrom of "Old Age Tax" of 82¢ and "Unemploy. Tax" of.$1.23, making a total of $2.05, and leaving $32.95, paid in the envelope to the defendant.

The conclusion that such deduction for "travel" was so made for tax purposes is supported by defendant's exhibit 4, in which he verified, by his signature for each week of the period from July 1, 1939 to June 27, 1941, the payment to him of $15.60 for "Rental of Car of Fred McCaughey." We find no evidence, except testimony by the defendant, that it was agreed between him and the plaintiff that he was to be paid not only his commissions, but also $15.60 per week for traveling expenses.

A Mrs. Hunter, who was the bookkeeper of the plaintiff during the whole period involved in this case and for some time before that, testified for the plaintiff. She said that from the time when the defendant was first employed as an outside salesman, he had a drawing account of $38 per week; that after an interval the sum paid to him on that account had exceeded the amount of the commissions on his sales for that interval and therefore his drawing account was reduced to $35 per week; and that later, for a similar reason, it was reduced to $30 per week. She also testified that the arrangement between the defendant and Spielmacher, as to the commissions and the drawing account as testified to by the latter, was told to her by both of them; and she was positive that the defendant regularly called such account his "drawing account."

She testified further that during this period, when the defendant was working on the basis of a commission on his sales and a drawing account, there was charged against him on such account, as shown by the books kept by her, $5213.88 and that his commissions came to $5123.58, leaving an overdraft by the defendant of $90.32. These figures were admitted by the defendant to be correct and it was also admitted by him that he owed the plaintiff for merchandise $16.96.

Albert Ciaccia, a witness for the defendant, testified that he himself worked for the plaintiff as an outside salesman on a commission basis for four and a half to five years, ending on March 10, 1942, when he was discharged; and that he signed, about every three months, vouchers for payments of $15.60 per week for rental of his car and that at least on one occasion when he signed such vouchers the defendant was present and signed similar vouchers. He did not testify that he received such payments for rental of his car *in addition to* his commissions on sales made by him; and his testimony is not inconsistent with the testimony of Spielmacher that such payments were made out of and as a part of the salesmen's commissions on sales made by them respectively.

The defendant testified that, when the sum paid to him weekly was reduced from $38 to $35, he complained to Spielmacher and said that he, the defendant, figured that there was money coming to him from his commissions on gross sales. He testified also that he was then told by Spielmacher that business was poor and every salesman would have to take some sort of reduction; and that an accounting would be given to the defendant at the end of a year from the making of the agreement.

The defendant also testified that when the year ended he asked Spielmacher for an accounting of what was coming to him and was told that it would be adjusted at a later date. He further testified that, when his weekly pay was reduced to $30 a week, he asked Spielmacher why this was done, when the company owed him money; that Spielmacher "stalled" him off again and that they had a rather heated discussion of the matter in February, 1942 and he threatened to bring suit against the plaintiff. That there was a heated discussion between these two men about that time was corroborated by the testimony of the defendant's witness Ciaccia, who said that he then heard the defendant demand something and say that he would get it even if he had to resort to other means.

But there is no evidence that the defendant, at any time while he was working for the plaintiff on a commission basis, made any claim that he was entitled to receive from the plaintiff not only his commissions of 27½% of the gross profits from his sales but also payments for the use of his car. And the testimony of Spielmacher was that the defendant made no such claim until long after he had left the employment of the plaintiff.

According to the testimony of Spielmacher, he sent to the defendant, two days after the latter left the employment of the plaintiff, a statement covering the period from January 1, 1939 to the time when defendant left and showing a debit balance against the latter of a little over $290. About two days later the defendant came in and Spielmacher asked him about the account and the latter said: "You haven't got it figured right. . . . My commissions were to start . . . April 1st and not January 1st", referring to the year 1939. On the basis then claimed by the defendant, the balance against him would be reduced by $205.92. Spielmacher said to him: "I'll write it off and send you a corrected statement"; and the defendant said: "All right, I'll take care of it then."

Spielmacher did write off this amount; and the ledger sheet covering the account and introduced in evidence shows a credit to the defendant of that amount entered March 31, 1942, which made the debit balance of the defendant on his employment account the same as it would have been if the entries for the period before April 1, 1939 were stricken out. And it corresponds with the plaintiff's claim in the instant case. Spielmacher testified that he sent to the defendant a corrected statement and later, on September 26 and December 17, 1942, sent letters to the defendant urging him to pay the bill, but received no reply. This testimony was not contradicted by the defendant and copies of such letters, verified by Spielmacher, were introduced in evidence and their accuracy was not questioned by the defendant.

Spielmacher testified also that the defendant around that time, after terminating his employment with the plaintiff,

never told him that anything was due to the defendant for the use of his car or claimed any setoff by reason of such use.

The plaintiff's bookkeeper, Mrs. Hunter, testified that she sent to the defendant monthly statements of his account showing his commissions on his sales during the month covered by each statement; and that none of these statements showed any credit to him for traveling expenses in addition to his commissions on sales. She also testified that he never claimed to her that he was entitled to such an additional credit. This testimony was not contradicted by the defendant and we do not find in the transcript any testimony by him that during the period when he was working for the plaintiff on a commission basis he ever complained to Spielmacher that, in addition to his commissions on his sales, he was entitled to be paid by the plaintiff for the use of his automobile at the rate of $15.60 per week and had not been getting such *additional* payments.

Indeed, he testified as follows, with regard to one of the flaps above referred to as cut off from his pay envelopes, being the one for July, 1940, and marked as defendant's exhibit 2: "It says: 'July, 1940, Commissions—$129.87; Travel Expense—$62.40'. Then the taxes below are figured, '67¢ for Old Age' and '$1.01 for Unemployment Insurance.' " The flap shows a deduction of the traveling expenses from the month's commissions, leaving "Net 67.47"; and the amounts of 67¢ for "Old Age Tax" and $1.01 for "Unemploy. Tax" are evidently 1% and 1½% respectively of the difference between $129.87 and $62.40. Each of the other flaps shows a similar deduction of traveling expenses from commissions and a similar determination of the contributions to the insurance funds.

He also testified that he asked Spielmacher, as to one of the first of these pay envelopes, "what was the purpose of deducting the travel from my gross earnings" and that Spielmacher said that it was for the purpose of making the social security tax deductions. This seems to have satisfied him and, so far as the evidence shows, he did not further, during

the period of his employment or afterwards, take up with Spielmacher the subject of payment for the use of his car, except that he testified that early in February 1942 he first talked with Spielmacher about being reimbursed for his traveling expenses.

It is extremely improbable that, if the defendant, when he began to work on a commission basis, had been assured by Spielmacher that in addition to his commissions on his sales he would be paid by the plaintiff $15.60 per week for his traveling expenses, he would have continued to work for the plaintiff, as he did, for about three years without getting any such additional payments and without taking any measures to get them until after the instant case had reached the superior court.

We have carefully read and considered all the evidence in this case and are of the opinion that the defendant has clearly failed to sustain the burden of proving his counterclaim or plea in setoff by a preponderance of the evidence. And it is worthy of note that the trial justice, in his rescript denying the plaintiff's motion for a new trial, did not state or show that he was applying the rule that a defendant who filed a plea in setoff or counterclaim has the burden of supporting such plea by a preponderance of the evidence.

We are of the opinion that the plaintiff's first exception, to the decision of the trial justice denying the plaintiff's motion for a new trial, should be sustained. As the result of the sustaining of that exception is that the plaintiff is entitled to a new trial on all the issues presented by the pleadings, we see no sufficient reason for discussing any of the plaintiff's other exceptions.

The plaintiff's first exception is sustained, and the case is remitted to the superior court for a new trial.

*Mortimer G. Cummings, Raphael Vicario,* for plaintiff.
*Charles A. Curran,* for defendant.